UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEASTIASHIA MILLERD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEDRO-WOOLLEY, et al.,<br><br>Defendants. | CASE NO. C25-1390JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court is Defendants'[1] motion for judgment on the pleadings. (MJP (Dkt. # 20); Reply (Dkt. # 26).) Plaintiffs[2] oppose the motion. (Resp. (Dkt. # 24).) The

---

[1] Defendants are City of Sedro-Woolley (the "City"), City Administrator Charlie Bush, Mayor Julia Johnson, and Police Chief Daniel McIlraith (collectively, the "Individual Defendants" and, together with the City, "Defendants"). (Compl. (Dkt. # 1) ¶¶ 12-15.)

[2] Plaintiffs are Neastiashia Millerd, Bonnie Dunlavy, William Keith Gilfillen, Jeff Good, Joshua Freeman, Wesley Heinzman, Kilina Preston, Tristin Loraas, and Samantha Gates (together, "Plaintiffs"). (Compl. ¶¶ 3-11.)

court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[3] the court GRANTS in part and DENIES in part Defendants' motion, and GRANTS Plaintiffs leave to amend.

## II. BACKGROUND

This civil rights action arises from the sudden, city-mandated closure and mass eviction of residents from the Skagit Motel housing complex (the "Motel") in Sedro-Woolley, Washington. (Compl. (Dkt. # 1) ¶¶ 59-60.) Comprising approximately 47 units across two buildings, the former motel had transitioned over time into an affordable, long-term housing option of last resort within a tight regional rental market. (*Id.* ¶¶ 16-20.) Prior to August 3, 2023, the Motel provided stable shelter to more than twenty families and individuals, including low-wage workers, families with children, elderly and disabled individuals, and the unemployed. (*Id.* ¶ 21.)

Escalating emergency service calls and suspected drug activity at the Motel eventually drew intense scrutiny from Sedro-Woolley city leadership. (*Id.* ¶ 29.) On June 27, 2023, a local law enforcement drug task force raided four specific units within the Motel, prompting drug testing of those units' walls. (*Id.* ¶ 39.) On or about July 18, 2023, the Skagit County Public Health Department received test results confirming methamphetamine and fentanyl contamination within the targeted units. (*Id.* ¶ 44.) Consequently, on August 2, 2023, the county health department issued an order closing

[3] The parties request oral argument. (MJP at 1; Resp. at 1.) The court, however, concludes that oral argument would not assist it in the resolution of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

only those four contaminated rooms. (*Id.* ¶¶ 63-65; *see also* Maxey Decl. (Dkt. # 21) ¶ 2, Ex. 1 (City Order) at 6 (County Order).) According to Plaintiffs, rather than adhering to the county's limited directive, Sedro-Woolley's mayor, city administrator, and police chief collectively determined to close the entire Motel. (Compl. ¶ 59.)

The City executed its directive with less than eighteen hours' notice to the Motel's residents. (*Id.* ¶ 99.) On the evening of August 2, 2023, Sedro-Woolley police officers distributed notices to residents' doors announcing that the City would "red tag" the buildings at 9:00 A.M. the following morning. (*Id.* ¶ 66; *see also* Crain Decl. (Dkt. # 25) ¶ 2, Ex. 1 (Police Not.).) The notice warned that all occupants were required to leave the property immediately upon tagging and that any individuals remaining or re-entering would face arrest for criminal trespass under RCW 9A.52.080. (Compl. ¶ 70.) By the designated hour on August 3, 2023, a heavy presence of uniformed police officers and vehicles restricted access to the property and ordered tenants to move out. (*Id.* ¶¶ 82-86.) While tenants vacated the premises and loaded their personal property into vehicles, municipal staff and contractors simultaneously boarded up the building's doors and windows. (*Id.* ¶ 84.) Despite providing no social workers or emergency housing funds to assist the displaced population, the City completed the mass eviction under threat of criminal prosecution, leaving the displaced tenants almost uniformly unhoused or in inadequate temporary shelter. (*Id.* ¶¶ 78-79, 82-86.)

Plaintiffs, none of whom lived in the four contaminated units, filed their complaint on July 23, 2025. (*See generally id.*) They bring claims against the City and the Individual Defendants in their individual capacities for denial of Plaintiffs' procedural

due process rights (*id.* ¶¶ 103-21); violation of Plaintiffs' substantive due process rights by exposing them to a state-created danger (*id.* ¶¶ 122-32); and wrongful eviction in violation of Washington common law (*id.* ¶¶ 133-37). Plaintiffs also allege a common-law trespass claim against the City and Chief McIlraith (*id.* ¶¶ 138-46) and a claim for unlawfully summoning law enforcement in violation of RCW 4.24.345 against City Administrator Bush and Mayor Johnson (*id.* ¶¶ 147-52). Plaintiffs seek a declaratory judgment, injunctive relief prohibiting the City "from removing tenants from their homes without a court order authorizing it to do so[,]" damages, punitive damages, and costs and attorneys' fees. (*Id.* at 31.)

Defendants answered the complaint on October 27, 2025. (Answer (Dkt. # 15).) They filed their motion for judgment on the pleadings on May 29, 2026. (MJP.) The motion is now fully briefed and ripe for decision.

## III. ANALYSIS

Defendants ask the court to (1) grant their motion for judgment on the pleadings on Plaintiffs' procedural and substantive due process claims, and (2) either dismiss Plaintiffs' state-law claims for failure to exhaust administrative remedies or decline to exercise supplemental jurisdiction over those claims. (*See id*. at 1-2.)

### A. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The legal standard governing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "functionally identical" to the standard applied to a motion to dismiss for failure

to state a claim under Rule 12(b)(6). *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, the central issue presented by a Rule 12(c) motion is whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 & n.4 (9th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion for judgment on the pleadings, the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The court need not accept as true legal conclusions, "formulaic recitation[s] of the elements of a cause of action[,]" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, "[j]udgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

//

//

**B. First Cause of Action: Denial of Plaintiffs' Procedural Due Process Rights (42 U.S.C. § 1983)**

The court first addresses Plaintiffs' First Cause of Action, beginning with the Individual Defendants' assertions of qualified immunity.

1. <u>The Individual Defendants' Entitlement to Qualified Immunity</u>

Qualified immunity shields government officials sued in their individual capacity from money damages under § 1983 unless the plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The court may begin its analysis with either prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (cleaned up and citation omitted). The plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018). A clearly established right "should not be defined 'at a high level of generality'" and must be "'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017). "To find that a right is clearly established," the court must "'identify a case where an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Zorn v. Linton*, --- U.S. --

-, 146 S. Ct. 926, 930 (2026) (quoting *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 43 (2019)).

Defendants assert that Mayor Johnson, City Administrator Bush, and Chief McIlraith are entitled to qualified immunity because no clearly established law prohibited a city official from summarily closing a residential building to address a chemical contamination threat or recognized the state-created danger theory pled in Count II. (MJP at 19-21.) The court exercises its discretion to address the second prong first, and finds it dispositive.

Plaintiffs have met their burden to demonstrate that the underlying procedural due process rights were clearly established when Defendants evicted them from the Motel in August 2023. Longstanding Ninth Circuit precedent establishes that tenants possess a protected property interest in their leaseholds and cannot be summarily displaced by law enforcement without civil due process. *See, e.g.*, *Armendariz v. Penman*, 31 F.3d, 860, 865-66, *vacated in part on other grounds on reh'g en banc*, 75 F.3d 1311 (9th Cir. 1996).

Under the surviving procedural due process framework of *Armendariz*, it is clearly established that qualified immunity is unavailable where municipal executives invoke emergency code enforcement powers as a pretext to bypass standard pre-deprivation notice and hearings. *Armendariz*, 31 F.3d at 866. The rationale permitting summary executive action does not apply where officials know no emergency exists or act with reckless disregard of the actual circumstances. *Id*. Particularizing the inquiry to these specific circumstances, a reasonable official would have understood that executing a full-complex eviction under a localized four-unit contamination order—with specific

knowledge that the specialized health authority explicitly found no basis for a total closure—violates procedural due process. Because longstanding circuit authority placed these constitutional limits beyond debate, the court agrees with Plaintiffs that the right to prior notice and a hearing under these circumstances was clearly established. Therefore, the Individual Defendants are not entitled to qualified immunity on Plaintiffs' procedural due process claim.

2. The Individual Defendants' Liability

To subject an official to individual liability under § 1983, a plaintiff must allege facts demonstrating the official's personal participation in the underlying constitutional violation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Supervisory personnel are not liable under a theory of *respondeat superior*; instead, a plaintiff must plead that each defendant, through their own individual actions, violated the Constitution. *Iqbal*, 556 U.S. at 676.

*a. City Administrator Bush*

Plaintiffs allege that City Administrator Bush was the primary "building official" who directly orchestrated and implemented the total closure, actively bypassing the county health department's targeted directive to shutter only the four tested units. (Compl. ¶¶ 29, 53, 56, 59, 113; *see also* City Order at 4 (signed by City Administrator Bush).) Accepting these allegations as true, City Administrator Bush's personal enforcement actions directly triggered the summary deprivation of Plaintiffs' protected housing interests without adequate notice or an opportunity to be heard, thus violating Plaintiffs' procedural due process rights.

*b. Mayor Johnson and Chief McIlraith*

In contrast, the court finds that Plaintiffs fail to sufficiently allege personal participation by Mayor Johnson and Chief McIlraith. Plaintiffs' allegations regarding Mayor Johnson and Chief McIlraith's attendance at operational meetings, receipt of contamination reports, and subsequent high-level discussions indicate their contemporaneous awareness of the unfolding situation, (Compl. ¶¶ 29-32, 44-46, 51-53), but do not establish that their specific, individual actions caused the underlying deprivation. Furthermore, Plaintiffs' general "information and belief" assertions that the Mayor and Chief "decided, directed, or ratified" the full closure and police deployment represent a formulaic recitation of supervisory liability. (*See, e.g.*, Compl. ¶¶ 59-60.) These naked conclusions lack the specific factual context required to establish a direct, non-conclusory causal link between their individual conduct and the physical eviction. *See Iqbal*, 556 U.S. at 676 ("A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Accordingly, the court grants Defendants' motion for judgment as to Plaintiffs' procedural due process claims against Mayor Johnson and Chief McIlraith.

3. <u>Municipal Liability Claim Against the City</u>

Defendants move to dismiss Plaintiffs' procedural due process claim against the City, alleging that Plaintiffs do not plausibly plead a theory of liability under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). (MJP at 21-24.) To state a procedural due process claim against a municipality, a plaintiff must establish a deprivation of a protected interest without adequate procedural protections, *Swarthout v.*

*Cooke*, 562 U.S. 216, 219 (2011), and demonstrate that the constitutional injury was inflicted pursuant to a municipal policy, practice, or custom under *Monell*, 436 U.S. at 694.

In their Reply, Defendants expressly withdrew their motion regarding the merits of Plaintiffs' procedural due process claim and reserved their emergency-doctrine defense for summary judgment. (*See* Reply at 6 & n.1.) The court therefore confines its evaluation to whether Plaintiffs have adequately stated a *Monell* claim against the City under either a final policymaker or failure-to-train theory.

*a. Final Policymaker Theory*

Under *Monell*, municipal liability may attach for a single decision made by a municipal official who possesses final policymaking authority for the local government in that specific area of responsibility. *Puente v. City of Phoenix*, 123 F.4th 1035, 1065 (9th Cir. 2024) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)); *see also Webb v. Sloan*, 330 F.3d 1158, 1163 (9th Cir. 2003) (citing *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A municipality can be liable even for an isolated constitutional violation, however, when the person causing the violation has final policymaking authority.").

Whether an official has final policymaking authority is a question of state and local law for the court to decide. *Praprotnik,* 485 U.S. at 123; *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). A federal court looks directly to municipal ordinances to determine where final authority resides: "[A] federal court would not be justified in

assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 126.

Defendants argue that the procedural due process claim against the City must be dismissed because none of the individual defendants are final policymakers for the specific subject matter of building condemnations and evictions. (MJP at 22-23.) Specifically, Defendants contend that under the Sedro-Woolley Municipal Code, City Administrator Bush's decisions as a building official are not final because they are subject to a thirty-day administrative appeal process under SWMC Chapter 18.50. (*Id.* at 22 (citing *Praprotnik*, 485 U.S. at 127); *see also* City Order at 3.) Defendants further assert that the general municipal administration authority held by Mayor Johnson (SWMC § 2.02.060) and Chief McIlraith (SWMC § 2.20.020) does not constitute final policymaking authority over the specific area of housing condemnations. (MJP at 22-23.)

In response, Plaintiffs contend that Defendants misrepresent *Praprotnik*'s holding, which evaluated whether a low-level subordinate employee could be considered a final policymaker. (Resp. at 16-17.) Plaintiffs argue that local ordinances explicitly vest final policymaking and enforcement authority in the named individual defendants. (*Id.* at 18-19.) Specifically, Plaintiffs point to SWMC §§ 15.04.043 and 18.50.020, which designate the building official as the authority to administer building codes and declare structures unfit for habitation. (*see* Crain Decl., ¶ 4, Ex. 3 (providing the Sedro-Woolley Munical Code referenced in the Response).) Plaintiffs also cite SWMC § 2.02.020, which designates the Mayor as the chief executive in charge of all departments and responsible for ensuring laws are faithfully enforced, and SWMC § 2.06.020, which gives

the City Administrator direct management over all city departments, including supervision over the Chief of Police. (Resp. at 18-19.)

Although an official whose discretionary choices are subject to meaningful administrative review is ordinarily not a final policymaker, the Ninth Circuit recognizes that an executive official acts as a final policymaker when they possess unreviewable authority to implement an immediate operational directive. *See, e.g.*, *Lytle v. Carl*, 382 F.3d 978, 983-86 (9th Cir. 2004) (holding that an official holds final policymaking authority if their specific operational choices are insulated from meaningful, proactive administrative review by a superior governing body); *see also Webb*, 330 F.3d at 1164-65 (finding final policymaking authority where an executive official exercises unreviewable, statutory control over a particular municipal function). The theoretical availability of a thirty-day municipal appeals process under SWMC Chapter 18.50 did not constrain the immediate execution of the mass eviction. According to the complaint, Mayor Johnson, City Administrator Bush, and Chief McIlraith collectively bypassed the narrow four-unit public health order and implemented a new, unreviewable operational mandate to clear all 47 units within 18 hours under threat of criminal arrest. (Compl. ¶¶ 59-60.)

The court agrees with Plaintiffs that the executive decisions of the Mayor, City Administrator, and Police Chief were not subject to any intermediate administrative veto or meaningful review prior to the physical boarding of the property. (Resp. at 19-21 (so asserting and citing SWMC §§ 15.04.043, 2.02.020, 2.02.060).) Therefore, accepting Plaintiffs' factual allegations as true and construing local law, the court finds that Plaintiffs have plausibly alleged that these high-ranking executives acted as the final

municipal policymakers for the specific enforcement action at issue. Accordingly, Defendants' motion for judgment on the pleadings as to the *Monell* procedural due process claim under the final policymaker theory is denied.

*b. Failure-to-Train Theory*

A municipality's failure to train its employees can serve as the basis for § 1983 liability only where that failure to train amounts to "deliberate indifference" to the constitutional rights of persons with whom the untrained employees come into contact. *Bell v. Williams*, 108 F.4th 809, 824 (9th Cir. 2024) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). While a plaintiff ordinarily must demonstrate a pattern of prior similar constitutional violations to show deliberate indifference, *Connick v. Thompson*, 563 U.S. 51, 62 (2011), the Supreme Court recognized a narrow "single-incident" exception in *Canton*. 489 U.S. at 388. This narrow avenue applies when a municipality gives employees broad power over high-stakes, recurring situations but fails to train them on the constitutional limits of that authority. *Id*. at 390 & n.10.

Defendants assert that because the complaint pleads no pattern of similar prior constitutional violations, the court must dismiss the failure-to-train claim as a matter of law. (MJP at 23-24.) In response, Plaintiffs point to their allegations that the City provided deficient training to "its police officers on what constitutes a tenancy, on the rights granted by a tenancy, and that tenants can only be removed from their homes by use of a state civil court process." (Compl. ¶¶ 101, 116.)

The deployment of municipal police officers to execute a summary residential clearance under threat of arrest presents an obvious, recurring risk of constitutional

violations if those officers lack basic instruction on the legal boundary between a trespasser and a tenant. Because the single-incident framework applies to situations where the failure to train on constitutional limitations is highly predictable, Plaintiffs' allegations are sufficient to survive the pleading stage. Accordingly, Defendants' motion for judgment on the pleadings as to the Monell failure-to-train claim is denied.

**C. Second Cause of Action: Violation of Plaintiffs' 14th Amendment Rights to Substantive Due Process by Exposing Them to a State-created Danger (42 U.S.C. § 1983)**

The court next evaluates the individual-capacity and municipal claims under the Second Cause of Action, beginning with the Individual Defendants' assertions of qualified immunity.

As a general rule, the Due Process Clause does not place an affirmative obligation on the state to protect individuals from hardships or dangers caused by private actors. *See Murguia v. Langdon*, 61 F.4th 1096, 1110-11 (9th Cir. 2023). The state-created-danger doctrine is an exception to this rule. *3PAK LLC v. City of Seattle*, 174 F.4th 1180, 1184 (9th Cir. 2026) (citing *Polanco v. Diazi*, 76 F.4th 918, 926 (9th Cir. 2023)). To state a claim under this doctrine, a plaintiff must satisfy a two-pronged inquiry: first, the plaintiff must allege that the defendant's "affirmative conduct…exposed him to an actual, particularized danger that [he] would not otherwise have faced[;]" and second, "that the state official acted with deliberate indifference to that known or obvious danger." *Polanco*, 76 F.4th at 926 (citation omitted and simplified). To satisfy the first prong, the state's affirmative actions must have placed the plaintiff in

a "worse position" than they would have been in had the state not acted at all. *Id.* (quoting *Pauluk v. Savage*, 836 F.3d 1117, 1124-25 (9th Cir. 2016)).

1. The Individual Defendants' Entitlement to Qualified Immunity

Defendants assert that Mayor Johnson, City Administrator Bush, and Chief McIlraith are entitled to qualified immunity against Plaintiffs' individual-capacity substantive due process claims because no clearly established law recognized the state-created danger theory under the circumstances pled in the complaint. (MJP at 21–22.)

The court exercises its discretion to begin with prong two of the qualified immunity framework—whether the asserted substantive due process right was clearly established in August 2023. Plaintiffs bear the strict burden to identify controlling precedent where an officer acting under similar circumstances was held to have violated the substantive component of the Due Process Clause. *Zorn*, 146 S. Ct. at 930; *White v. Pauly*, 580 U.S. 73, 79 (2017). The identified precedent must place the constitutional question beyond debate. *White*, 580 U.S. at 79.

While Ninth Circuit case law generally defines the boundaries of the state-created danger doctrine, neither the Supreme Court nor the Ninth Circuit has confronted a factually similar scenario where municipal executives executed a summary health or safety code closure of low-income housing and were held to have committed a substantive due process violation by exposing the displaced residents to subsequent hardships. Because Plaintiffs have not met their burden to identify a case where an officer acting under similar circumstances was held to have committed a substantive

violation, the Individual Defendants could not have reasonably understood that their administrative closure plan violated a clearly established substantive right.

Accordingly, the court grants Defendants' motion for judgment on the pleadings as to the individual-capacity substantive due process claims against Mayor Johnson, City Administrator Bush, and Chief McIlraith based on qualified immunity. These claims are dismissed with prejudice.

2. Plaintiffs State a Claim Against the City for Denial of Substantive Due Process Rights.

Here, Plaintiffs satisfy both prongs of the state-created danger test. Under the first prong, the City did not merely happen upon a pre-existing danger; rather, the City took immediate affirmative action by sending uniformed police officers to red-tag the property, bar access to the parking area, and physically board up residential windows and doors. (*See generally* Comp.) Although the City purports that this was an emergency intervention to protect tenants from localized drug contamination, the complaint alleges that the City unilaterally expanded a targeted, four-unit county health department closure order into a total, multi-building municipal shutdown. (*Id.*; *see also* City Order.) By abruptly executing a mass displacement of more than twenty low-income, disabled, and elderly families under threat of criminal trespass prosecution, the City affirmatively stripped the tenants of their stable shelter and forced them directly into unsheltered homelessness or inadequate emergency housing. (*See generally* Comp.) These well-pleaded facts demonstrate that the City's affirmative enforcement actions placed the

residents in a worse and more dangerous position than they occupied prior to the intervention.

Under the second prong, Plaintiffs have plausibly alleged that City officials acted with deliberate indifference to a known and obvious hazard. Deliberate indifference requires a showing that the state actor recognized an unreasonable risk and actually intended to expose the plaintiff to such risk, or acted with conscious disregard for it. *See Herrera v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1156, 1160 (9th Cir. 2021). Plaintiffs explicitly allege that City staff evaluated the situation prior to the eviction and determined that the City possessed neither the emergency funds nor the social workers necessary to help the tenants find alternative housing. (Compl. ¶ 48.) Despite knowing that a total municipal closure would leave dozens of residents without housing, the City proceeded with the evictions. (*See generally* Compl.) Because the pleadings sufficiently allege that the City consciously ignored the obvious health and safety risks of immediate displacement, Plaintiffs have stated a plausible substantive due process claim. Accordingly, the court denies Defendants' motion for judgment on the pleadings as to the second cause of action.

### D. The Court Declines to Dismiss Plaintiffs' State-law Claims for Failure to Exhaust.

Defendants move to dismiss Plaintiffs' state-law tort claims for wrongful eviction, trespass, and unlawfully summoning a law enforcement officer, arguing that Plaintiffs failed to exhaust their administrative remedies by omitting to file a local municipal appeal within thirty days of the City Order. (MJP at 24-25.) Under Washington law, the

doctrine of exhaustion of administrative remedies generally dictates that a party must pursue all available avenues of agency review before seeking relief in superior court. *See Citizens for Mount Vernon v. City of Mount Vernon*, 947 P.2d 1208, 1211 (Wash. 1997) ("The court will not intervene and administrative remedies need to be exhausted when the 'relief sought…can be obtained by resort to an exclusive or adequate administrative remedy.'") (citation omitted). Washington courts, however, recognize that the exhaustion requirement is not absolute and may be excused where the administrative remedies provided are inadequate to address the specific relief sought. *See Smith v. Bates Tech. Coll.*, 991 P.2d 1135, 1143-45 (Wash. 2000) (holding that an administrative appeal process cannot bar independent, common law tort actions where the agency lacks the authority to adjudicate such claims or award full compensatory damages).

Here, the court declines to dismiss Plaintiffs' state-law claims for two reasons. First, the municipal appeals process cited by Defendants is restricted to reviewing the structural and environmental basis of the building's condemnation. *See* SWMC Chapter 18.50 *et seq*. (limiting the appeals board's authority to the technical and factual correctness of an unfit building determination). The municipal board possesses neither the specialized jurisdiction to adjudicate common law tort liabilities nor the authority to award individual compensatory damages to residents for property loss and wrongful displacement. *See generally id.* Second, even if an administrative remedy were appropriate, Plaintiffs explicitly allege in the pleadings that they never received notice of the appeal rights provided under SWMC Chapter 18.50. (*See* Resp. at 36; *see also* Compl. ¶¶ 70-74 (stating that the Police Not. provided to tenants mandated that they

vacate the Motel but did not provide notice of an appeals process).) Accepting these factual allegations as true and construing them in the light most favorable to Plaintiffs, the court cannot find as a matter of law that Plaintiffs waived their administrative remedies when the City failed to provide notice of those rights concurrently with the 18-hour eviction deadline. Accordingly, the court denies Defendants' motion for judgment on Plaintiffs' state-law claims.

**E. The Court Grants Leave to Amend.**

Under Rule 15(a)(2), the court ordinarily grants leave to amend to facilitate decisions on the merits. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The court should deny leave, however, if the amendment is futile, causes prejudice, or creates undue delay. *Yakama Indian Nation v. State of Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

With respect to the individual-capacity procedural due process claims against Mayor Johnson and Chief McIlraith, the court cannot conclude that the pleading deficiencies regarding personal participation cannot possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted). Because these specific pleading defects are potentially curable, granting leave to amend these claims is appropriate.

Conversely, any amendment to the individual-capacity substantive due process claims against Mayor Johnson, City Administrator Bush, and Chief McIlraith would be futile. Because the court has determined that those claims fail as a matter of law under

the clearly established prong of the qualified immunity framework, no additional factual allegations could overcome the individuals' entitlement to immunity. Accordingly, the court denies leave to amend as to the substantive due process claims against the individual defendants.

Accordingly, the court grants Plaintiffs leave to amend solely to address the specific personal participation deficiencies identified within their Fourteenth Amendment procedural due process claims. Plaintiffs may file an amended complaint that addresses these specific deficiencies.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' motion for judgment on the pleadings (Dkt. # 20) and GRANTS leave to amend. Specifically, the court ORDERS as follows:

1. The court DENIES Defendants' motion as to Plaintiffs' substantive and procedural due process claims against Defendant City of Sedro-Woolley.
2. The court DENIES Defendants' motion as to the individual-capacity procedural due process claim against Defendant City Administrator Bush.
3. The court GRANTS Defendants' motion as to the individual-capacity procedural due process claims against Defendants Mayor Johnson and Chief McIlraith. The court DISMISSES these claims without prejudice for failure to adequately allege personal participation.
4. The court GRANTS Defendants' motion as to the individual-capacity substantive due process claims against Defendants Mayor Johnson, City Administrator Bush,

and Chief McIlraith. The court DISMISSES these claims with prejudice on qualified immunity grounds.

5. Plaintiffs may file an amended complaint to address the specific pleading deficiencies identified herein by no later than **Thursday, September 10, 2026**.

Dated this 20th day of August, 2026.

JAMES L. ROBART
United States District Judge